WILLIAM S. SPARR AND H. R. DUVAL, RECEIVER FLORIDA RAILWAY AND NAVIGATION COMPANY, APPELLANTS, VS. THE FLORIDA SOUTHERN RAILWAY COMPANY, APPELLEE.

The defendant, S., borrowed $500 from complainants, and gave his notes for the same, and to secure the payment of the notes executed to complainants a chattel mortgage on a steamboat. The notes fell due and were not paid, and complainants commenced suit to foreclose the mortgage, and prayed for injunction and the appointment of a Receiver; the injunction was granted and Receiver appointed. The defendant, S., pleaded his infancy at the time of the making of the notes and executing the mortgage; the plea was sustained on demurrer; motion was made to vacate the order granting injunction and appointing a Receiver, and affidavits were submitted in favor of and against the motion, but neither the affidavits nor anything in the record denies the infancy of S. at the time of making the notes and mortgage, or shows an affirmation of the contract after he attained his majority, but his infancy is affimatively shown by affidavit: *Held*, That it was error to refuse to vacate the order granting injunction and appointing a Receiver.

Appeal from the Circuit Court for Marion county.

The facts of the case are stated in the opinion of the court.

*John A. Henderson* for Appellants.

### BRIEF OF ARGUMENT.

The Receiver should not have been appointed :

Because no fact in the bill was verified by the oath of anyone. The manager of the complainant company swore to no allegation of the bill of his own knowledge. Cunningham vs. Tucker, 14 Fla., 251; State of Florida vs. J. P. & M. R. R., 15 Fla., 201.

The bill made no case entitling the complainant to a Receiver. Pomeroy Eq. Juris., Sec. 1331.

The " amended bill " was no part of the record, and its allegations were not a proper basis for court's consideration. Rule 27, for Circuit Court in Equity ; Koon *et al.* vs. Jordan, 13 Fla., 333.

The case as made by the bill was one of simple foreclosure for a debt of $500 on a steamboat, that could not run away, and it was an abuse of discretion for the court to have seized Sparr's property and turned it over to the use of the appellee.

Sparr had no notice of the allegations of the " amended bill," and could not have, for the bill had been off the files at such times as he should have seen the same ; and the " amended bill " has never been and does not now form any part of this case.

### SECOND AND THIRD ERRORS ASSIGNED.

By the terms of the order appointing the Receiver, the Florida Southern Railway Company was first required to file its bonds with sureties, for indemnifying Sparr for the improper action &c., if it should be so adjudged. The bond filed was executed by a corporation having a seal and offi-

cers to execute papers under its seal, and to make bonds to bind the company. The signing thus: (as done) "The Fla. Sou. Ry. Co. [Seal]," was not the act of the company, and evidences no act of its proper officers, and does not bind the appellee; the bond as to the company is a nullity. McClellan's Digest, Appendix, page 1018; Damon vs. Granby, 2 Pick., 345; Ransom vs. Stonington, etc., Bank, 13 N. J., 212; S., F. & W. Ry. Co. vs. ——— Sup. Ct. Fla., this term.

Where a statute makes sealing an essential condition for the validity of a contract, this formality must, of course be observed. Boone on Corporations, Sec. 59; Field on Corporations, Sec. 288.

### FOURTH ERROR ASSIGNED.

When affidavits were filed and it was made to appear to the court that every material allegation of the complainant's bill, except that of the borrowing of the money and the non payment of the same by Sparr, was untrue, and as to that that the debt was contracted by a minor for money loaned at oppressive rates to Sparr, that he might expend it for the complainant in improvements to their advantage, and that the contract was one which he abandoned and re-repudiated as soon as he became of age, of which complainant had knowledge, for it charges the breach as one of its grievances, and that the boat was being well managed and properly cared for, and was shut up in a lake, from which it could not be run off, and that Sparr was abundantly able to respond to any recovery it might have against him—it was clearly the duty of the court to have vacated its order for the Receiver.

While the appointment of a Receiver is a matter discretionary with the court, the discretion is not, however, arbitrary or absolute, but is one to be exercised for the pre-

servation of the rights of all the parties interested · in the controversy, and based upon the fact that there is no other adequate remedy.    Pomeroy Eq. Jurisprudence, sec. 1331.

It must appear satisfactorily to the Judge that sufficient grounds exist for making the order.    12 Fla., 254.    One of the most material circumstances, without which the court would hardly make the order of appointment, is the reasonable probability that the party asking for the Receiver will ultimately succeed in obtaining the relief sought by the bill.    Pomeroy Eq. Juris., sec. 1331.    In this case, to have justified the order made, there were only two reasons to be considered ; would the plaintiff recover, and was his relief endangered.    Bainbrigge vs. Bradeley, 34 H. L. cases, 413.    That the court did not think there would be ultimate recovery is evidenced by the fact that it sustained Sparr's plea of infancy, afterwards made, as a glood plea, and his infancy appeared in the affidavits of the Messrs. Sparr.    That the property was in no danger of loss or depreciation, all the witnesses who testify at all of their own knowledge agree.    And even if the boat should have been a total loss, two witnesses, and all of the affiants, who speak with knowledge or pretence of knowledge unite in averring that Sparr was worth more than double the amount of the maximum recovery in property subject to execution.    But it may be said that the court regarded the traffic agreement ; to this the complete answer is that no such allegations are in the bill, and no prayer was made tor observance of the same.    That if prayed for, in no event could such a contract be enforced in law or in equity.    The only consideration passing to the infant was a loan, for which he was to pay exorbitant interest and make ample security. To enforce so onerous a contract as that he would carry all freights to mortgagee, was without consideration and with-

out measure of damages for which, and was a contract which he repudidated on reaching majority, of which the mortgagee had notice. Parsons on Contracts, vol. 1, (7th Ed.) 299 ; Addison on Contracts, vol. 1, sec. 164.

Any breach of this covenant was not covered by the mortgage. Relief could only be had for the debt covered by the mortgage. Turner, Jessup & Co. vs. Roberts, 16 Fla., 739.

In the most favorable view of the case the Chancellor should not have exceeded an order " tying the boat up," until Sparr gave security for the payment of the loaned money, at this hearing. If it was endangering appellee's interest in boat that she should be operated, would not Sparr's interest be in like jeopardy if Receiver run the boat ? There is no pretence that the boat was not worth the money. The hidden purposes of the application and of the Receivership are so scantily clothed that its selfishness is most striking. But to have let the boat remain idle was to punish Duval's Company ; and it was the duty of the court to protect this interest. How this was to be done by continuing the boat in the service of the Florida Southern Railway Company, where it was losing money, is beyond ordinary comprehension. Ballard vs. Eckman & Vecksburg, 20 Fla., 661 ; Fricker vs. Peters & Cahoon Co., 21 Fla., 256 ; Bawes vs. Hoeg, 15 Fla., 403.

### FIFTH ERROR ASSIGNED.

In addition to other reasons given to 4th assignment, all of which is applicable here, it was error not to have dismissed the Receiver at this hearing, for then Sparr's plea of infancy was admitted by the appellee to have been true, (Hendry & Wife vs. Clardy et al., 8th Fla., 80,) and the court held the plea to the whole bill good. Record, page 35. It then appeared to the court that about the day, or

very soon thereafter, Sparr became of age, he had sold fifty-one one-hundredths, or a controlling interest, to a third party for a valuable consideration, who was without any knowledge whatever of this mortgage to the appellee, and that at the time of such purchase there was no record of any such mortgage from Sparr to anyone, and that Sparr was in the possession and apparent ownership of the property. This third party was before the court, having made himself a party to protect his rights, which were asserted in his answer. As to his interest the unrecorded mortgage was void. McClellan's Digest, page 215 ; Sanders vs. Pepoon *et al.*, 4 Fla., 465 ; Weed vs. Stanley, 12 Fla., 166 ; Cunningham vs. Tucker *et al.*, 14 Fla., 251.

### SIXTH ERROR ASSIGNED

Is upon the court's refusal to relieve the property from the custody of the Receiver and restore it to the control of the owners upon the tender of the defendant Sparr to substitute any security which the court might require to make certain the relief which should be decreed to the appellee.

### SEVENTH ERROR ASSIGNED.

The mortgage is voidable as to defendant Sparr, and absolutely void as a lien upon the boat, or a claim of any kind on the interest therein, of the Florida Railway and Navigation Company.

### EIGHTH AND NINTH ERRORS ASSIGNED.

The appellee's remedy, if any he has on this traffic contract, was at law and not in equity. The mortgage did not contemplate, in its language, that there was any lien created by it on the boat, for any damages for the breach of the traffic contract. The appellee had his standing in a court of equity because of his lien on the boat. The lien could not be extended to cover any debts not expressed in

JANUARY TERM, 1889. 191

Sparr and Duval vs. Fla. Southern Ry. Co.—Argument of Counsel.

the instrument creating. The proper action on the contract was at law. But I contend that it is against public policy that a corporation with limited powers shall be allowed to loan money, *ultra vires*, and, as a condition for such loans, secure exclusive connections with itself as a carrier, when it has no authority to do either act.

And finally, that when the demurrer to the plea and answer was overruled, and the court declared that the plea of infancy to the contract was a good plea, and the appellee did not either reply or take leave to amend, the court should have dismissed the bill. Rules of Circuit Court Practice in equity, 54 and 55.

*Calhoun & Davis,* for Appellee.

The first reference to authority by Solicitor for appellant is to 14 Fla. 251, upon the subject of the sufficiency of the oath to the bill for injunction and receiver. This authority only shows that the bill itself should contain allegations sufficiently definite and positive, and does not relate to the form of the oath. It will be observed that the bill in the case at bar is sufficiently positive and pointed, and its allegations are unequivocal. It is not, therefore, subject to the objection raised in 14th Fla., Ibid. The oath of the General Manager who makes his affidavit is "so far as the facts are within his own knowledge they are true, and so far as divided from the knowledge of others, he believes them to be true." There is quite a difference between this form of affidavit and the one quoted in 20th Fla., 661. There the oath was, "to the best of his knowledge and belief."

1. We call attention of the court to the fact that besides the positive and unequivocal statements in this bill the application for injunction and receiver was supported by other affidavits, and that the presiding judge in the court below was satisfied with this showing.

2. The next reference of solicitor for appellant is to 15th Fla., 201, and there the only point is that notice of application for appointment of a receiver shall be given to opposite party except in cases of emergency. This doctrine does not affect the case at bar, because ample notice was given and served. See record p. 26.

The order appointing receiver also recites notice. See record p. 28.

3. As to amendment: Opposing counsel takes the position that the " amended bill " as it is termed, (but which, in fact, is nothing more than an amendment to the original bill) was no part of the record, and its allegations were not properly to be considered by the court. In support of this he cites equity rule No. 27 and 13th Fla., 333. Whether this be true or not would make no difference in this case. *The amendment was not before the court below at the time he appointed the receiver*, but was offered and allowed subsequently. At best the amendment merely sets up somewhat more elaborately and amply one of the alleged cases of damage and adds a new prayer. The original bill, however contained every necessary allegation and prayer to justify the order of the court below in granting receiver and injunction. At the time of the hearing on the motion to dissolve the court permitted the amendment to be signed. See record p. 61. Up to that time it had played no part in the proceeding, nor is there any reason to suppose it ever played any part in the proceedings. The original bill was enough.

As to complainant's bond: The next point raised by Appellant's brief is that the bond given by the Florida Southern Railway Company as a compliance with the order appointing a Receiver, is not under seal and is not the corporate bonds of the corporation. There is one feature about

the record to which we desire now to call attention. The original record in Supreme Court shows this bond to have been signed simply " Florida Southern Railway Company." A corrected and certified copy sent up by the Clerk of Court and agreed upon between counsel, shows the bond to be signed " Florida Southern Ry. Co., by S. Conant, G. M. (Seal.)"

In support of his position that this bond is not a sufficient one, appellants' solititor cites McClellan's Digest, 1018, where we find nothing on the subject, 2 Pick, 845, which, instead of being authority against us, we contend strongly sustains us. The same, too, may be said of the case in 13 N. J., while the decision of the Court in S., F. & W. Ry. Co. vs. Clarke, decided at this term and referred to by appellant is not at all upon the issue here. This bond is signed " The Florida Southern Ry. Co., by S. Conant, G. M. (seal.)" But this objection ought never to have been raised in this court. It was given by complainant in the court below after the order appointing a receiver, and was intended as a compliance. At the time the Receiver of the F., R. & N. Co. made himself a party to these proceedings, and a motion was made and argued to dissolve injunction and vacate the order appointing Receiver, this objection was never raised, nor has it ever been raised, until it reached this court. Had the objection to our bond been raised in court below, and the chancellor become satisfied that the bond was not a good one, he might have ordered the giving of a different one. Even in the Supreme Court no reversal should be had on this point, if there was anything in the objection. If the defendants are not properly secured by this bond, the complainants, the Florida Southern Ry. Co. can be ordered and compelled to offer the proper secu-

13

rity.   The bond, however, is a good one, and under it defendants are amply protected.   It can be sued upon in the courts, and its penalties enforced.

In the foregoing we have briefly adverted to the argument of solicitor for appellant, and feel content to leave it in the hands of the court.   For ourselves, we may add that the record shows a case where injunction ought to have been granted and a Receiver appointed.   If the allegations of the bill are true, the boat should remain in the hands of a receiver until the rights of the parties can be adjusted and passed upon after evidence is taken.   The injunction and Receiver should not only have been granted, but the Court below did right when he refused to interfere with his previous order upon the motion of appellant to dissolve and vacate.   At that time the chancellor had before him not only the affidavits presented by the Florida Southern Ry. Co., but he had the sworn return of the receiver, showing the condition of the property.   This return of the Receiver (Hickson) did not go up with the original record, but by suggesting diminution we had it supplied, and we invite the attention of the Court to it.

The appointment of a Receiver is a matter resting in the sound discretion of a court of equity, and a Receiver is treated as the representative or agent of the Court, and is subject to its orders.   He is appointed to secure the benefits of such persons as shall be entitled, and the proceeding does not effect the rights of the parties or the subject matter.   12 Fla., R. 301.

We invite the attention of the Court to the conduct of defendant Sparr in this entire transaction.   He had the benefit of the money of the appellee and then pleads infancy. Within a day after becoming of age, he proposes to dispose of part of his boat, or an interest in his boat, to the

F. R. & N. Ry. Co.   Here we find three interests in the property, viz.: that of the Florida Southern Railway Co., that of Sparr and that of Receiver Duval.   Was there ever a case when a Receiver seemed more necessary for the protection of varied and conflicting interests?

MITCHELL, J.:   The appellant, Sparr, borrowed of the appellee, Florida Southern Railway Company, $500, and gave therefor his two promissory notes; one dated April 2d, 1885, for $200, and payable to appellee or order, at Palatka, Fla., on the first day of July, 1885, with interest at 10 per cent. per annum; the other note bearing date said 2d day of April, 1885, for $300, with 10 per. cent interest per annum, and payable to the order of appellee at Palatka, Fla., April 15th 1886; and to secure the payment of said notes, Sparr, on said 2d day of April, 1885, executed and delivered to the appellee a chattel mortgage upon a certian steam boat " Little Bay," her masts, bowsprits, sails, boats, anchors, cables and all other necessaries to said vessel, appertaining and belonging, the said vessel being at the time on Orange Lake, Florida, which mortgage in addition to the condition for the payment of said notes, contains a stipulation or agreement to the effect that Sparr was not to allow the " Little Bay " to be sold for taxes; and that he shall not allow said vessel to be levied upon by writ of attachment, or execution, or legal process of any kind, and shall in the meantime, keep said vessel insured in the sum of $500, if the same can be obtained, and shall, till the said indebtedness is fully discharged, deliver to the complainant all freight received by the vessel that can be delivered by the complainant, Florida Southern Railway Company and its connections, and shall pay all costs and charges, including reasonable attorney's fees, the complainant or its successors and assigns may incur in collecting said money by foreclosure or suit.   * *

The notes fell due and were unpaid, and the complainant afterwards, (on 25th of April, 1886,) filed its bill in the circuit court of Marion county against Sparr, to foreclose the mortgage. The bill alleges that Sparr did not insure the vessel, " Little Bay," in any sum ; that he has not delivered to the complainant all freight received by said vessel that could be delivered by complainant and its connections ; and that Sparr, in violation of his covenants and agreements in the mortgage, has at divers times since the execution and delivery of the mortgage, knowingly and wilfully delivered freight from said vessel to the Florida Railway and Navigation Company to the great loss, injury and detriment of complainant, and has grossly used and mismanaged the business of the said vessel so that the same has remained idle and unproductive, and by such negligance and mismanagement has suffered and permitted the said vessel and her machinery, masts, &c., to become injured and damaged, and greatly depreciated in value, thereby greatly impairing complainant's security for the payment of the said sum of money.  *  *

The prayer of the bill is for foreclosure and for receiver Afterwards there appeared in the case what is called an " amended bill," but it bears no file mark, and is not signed by counsel.

Copy of mortgage and notes filed and made Exhibits " A," " B," "C."

On the rule day to which the writ was returnable, the papers were not in the office of the Clerk of the Circuit Court of Marion county, and hence the defendant, Sparr, could not plead, answer or demur thereto.

The defendant by his solicitors entered a special appearance in said cause June 7th, 1886.

On the 29th day of June, 1886, a receiver was appointed

in said cause, and the said vessel was placed in his charge by the Sheriff of Marion county under the order of the Judge of said court, and so far as the evidence shows the said vessel, " Little Bay," still remains in charge of said Receiver.

On October 18th, 1886, defendant entered motion to vacate the order appointing Receiver, and the order granting injunction, and affidavits *pro* and *con* were filed upon said motion, which motion was overruled November 2d, 1886.

On the 6th day of September, 1886, the defendant, Sparr, filed his plea and answer.

The plea sets up the infancy of Sparr at the time the mortage and notes were made and executed by him to the complainant, and avers that he was only twenty years of age at said time, and for answer denies that the business of the vessel, " Little Bay," was ever mismanaged by him or that he has ever suffered the same (the vessel) to become injured, damaged or depreciated in value, in any way whatever, but avers that this allegation of the bill is utterly false. Defendant makes no answer as to the " amended bill," treating it as a nullity.

This plea and answer was demurred to: 1st. Because the plea of infancy seeks to avoid a contract, pleaded an alleged to have been signed during infancy without alleging that said contract has been repudiated since reaching majority, or that it was a contract which an infant could not have signed.

The other grounds of demurrer we do not think it material to consider.

The demurrer was overruled.

On December 6th, 1886, H. R. Duval, as Receiver for the Florida Railway and Navigation Company, filed his petition in the Circuit Court of Marion county to be made a

party defendant to said suit, the petition setting up the appointment and qualification of said Receiver, and that said Florida Railway and Navigation Company in or about the month of August, 1885, bought from William S. Sparr, defendant in this suit, fifty-one one hundredths (51-100) of the steamer " Little Bay " and paid him for the purchase thereof, &c.

On the 9th of December, 1886, defendant, Sparr, filed notice that he would apply to the court for an order restoring to him the said steamer " Little Bay."

Upon hearing said petition (December 14th, 1886), H. R. Duval, as Receiver of the Florida Railway and Navigation Company was made a party defendant to said suit, and on the same day said Receiver filed his answer, in which he sets up the purchase of the interest in the steamer, " Little Bay," by the Florida Railway and Navigation Company as stated in petition, and at the time of said purchase of said interest in said steamboat there was no lien or incumbrance of any kind on said steamer of which the Receiver of the Florida Railway and Navigation Company was aware. That the chattel mortgage from Sparr to the Florida Southern Railway Company was not a matter of record in the Clerk's office in either of the counties of Alachua or Marion of the State of Florida, wherein the said steamboat " Little Bay " was at the time of said purchase held and detained. That if Sparr entered into the agreement as alleged as to freight traffic, &c., with the Florida Southern Railway Company it was only a personal obligation, and that the Florida Railway and Navigation Company bought a controlling interest in said steamboat, without any knowledge of the existence of such contract and that said steamer and the interest of the said Florida Railway and Navigation Company therein cannot be made

liable to the complainant in any damages for the breach thereof, &c.

On the same day (December 14th, 1886) the motion to dissolve the injunction, &c., was overruled.

From this order overruling said motion defendants appealed, and filed ten assignments of error.

The seventh error assigned is: the mortgage is void.

Upon this ground the whole case hinges.

Story lays down the doctrine as to contracts with infants as follows: " An infant may not only refuse to perform his executory contract during his infancy, but he may disaffirm them when he comes of age, and leave the other party remediless. As where he borrows money and expends it, or purchases goods and sells them, or consumes them, or makes a promissory note, he cannot be compelled to pay even though he has received all the benefit thereof; and the plea of infancy is a perfect defense both for the infant and his representative.

So also when the contract is executed, he may ordinarily disaffirm it at any time ; as where he sells any article, he may reclaim it upon tendering the price he paid ; or if he lease lands, he may receive the rent and suffer the lessee to remain, or he may rescind the contract, and treat the lessee as a tresspasser. And if he convey by bargain and sale, he may avoid such conveyance without entry, or he may convey to another person without notice to the first purchaser * *.

Every person deals with an infant at arms length, at his own risk, and with a party for whom the law has a jealous watchfulness * *, 1 Story on Contracts, secs. 104, 105, 108. (See also Dicey on Parties to Actions, marg. pages 12, 284, 474, and cases cited. 15 Gray R. 445 ; 97 Mass., 508 ; 27 Md., 327).

It is true that a minor may affirm a contract not tortious after attaining his majority, but in the case before us there is no allegation that Sparr ever at any time, after he arrived at the age of 21 years, affirmed his contract as to the promissory notes or the mortgage, the basis of this suit, but on the contrary it is shown that shortly after attaining his majority he filed his plea setting up his infancy, thus disaffirming said contract, and when he did so and the plea was held good, and was not disproved by the affidavits adduced by the complainants on the motion to vacate the order granting the injunction and appointing Receiver, or otherwise, but was affirmatively shown by an affidavit in the cause, the refusal of the court to vacate the order granting the injunction, and the appointment of a Receiver, was erroneous.

Reversed with directions to dissolve the injunction and to vacate the order appointing Receiver in said cause.